Decided 18 December, 1906.

**BAKER COUNTY v. HUNTINGTON.**

87 Pac. 1036.

APPEAL—REVIEW—SUBSEQUENT APPEALS.

1. Questions decided on appeal become the law of the case, precluding a review thereof on subsequent appeals in the same litigation.

OFFICIAL BONDS—TEST OF VALIDITY.

2. The validity of an official bond is determined by the signatures thereto and not by the insertion of the names of the parties in the body of the instrument.

OFFICIAL BONDS—LIMITING LIABILITY OF SURETIES.

3. The liability of the sureties on a joint and several official bond is not affected as to the obligee by any memoranda opposite the signatures, as, "For $1,000;" the responsibility being fixed by the terms of the promise.

TRIAL—INSTRUCTION NOT ASSUMING FACTS.

4. In an action on a tax collector's bond, an instruction that the mere signing by the sureties of an uncompleted instrument and leaving it with the collector, without any express restrictions as to its delivery, is not enough, as a matter of law, to show authority to deliver it, but it is an important fact, "if you find it to be a fact," to be considered, etc., does not assume that it had been proven that the defendants left the bond with the collector without restriction as to delivery.

APPEAL—HARMLESS ERROR—CONSTRUCTION OF CONTRACT BY JURY.

5. Under B. & C. Comp., § 136, making it incumbent on a court to interpret written instruments, error in submitting them to the jury is harmless if their finding thereon is correct.

TRIAL—INSTRUCTIONS—UNDUE EMPHASIS.

6. The use of the word "important" in referring to certain matters proper for the consideration of a jury will not be considered as placing undue stress on those matters where the word is used several times, and in the instructions submitted for both parties.

TRIAL—NEED OF ASKING PARTICULAR INSTRUCTIONS.

7. Where particular instructions are desired on special points, they must be requested or error cannot be assigned on the failure to so charge.

For instance: That instructions as to certain restrictions and reservations claimed to have been made in connection with the delivery of a bond in suit were confined to the time of delivery is not a subject for com-

(48th Or.—38)

plaint by the defendants, where they did not request that prior conversations be included in that portion of the charge.

SCOPE OF BILL OF EXCEPTIONS—TRANSCRIPT OF EVIDENCE.

8. An appeal in a law case must be tried on the bill of exceptions, and objections must be based on the record certified in that form—the fact that a transcript of all the testimony is attached to the bill does not enlarge the scope of the latter. The only purpose for which such an exhibit can be used is to enable the court to determine whether a motion for a nonsuit or a directed verdict should have been allowed.

APPEAL—PRESUMPTION AS TO BASIS FOR INSTRUCTION.

9. An instruction will always be presumed to have been based on evidence where the bill of exceptions does not purport to contain all the testimony, and it does not appear by the record that no testimony was offered on that point.

INTEREST ON UNSETTLED SUM BEFORE JUDGMENT.

10. Under Section 4595, B. & C. Comp., allowing interest on moneys after the same become due, interest cannot be allowed on a disputed claim until judgment is rendered, whether the dispute be as to the fact of liability or only as to the amount.

For instance: Where the sureties on a sheriff's bond controverted their liability for his default, though acknowledging the extent of his defalcation, interest is not allowable in the demand against them until its liquidation by judgment.

COSTS ON APPEAL—DISCRETION.

11. Under Section 566, B. & C. Comp., the supreme court may, in its discretion, allow either party its costs or disbursements, whether such party wins or loses.

From Umatilla: WILLIAM R. ELLIS, Judge.

Action on a sheriff's bond as tax collector by Baker County against A. H. Huntington and others. There was a judgment for plaintiff, and several defendants appeal.        AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. James Henry Raley.*

For respondent there was a brief with oral arguments by *Mr. Leroy Lomax* and *Mr. Gustav Anderson.*

MR. JUSTICE MOORE delivered the opinion of the court.

This is the third appeal by the defendants, A. L. Brown, D. Cartwright, J. T. Fyfer, James Fleetwood, and J. W. Isenhofer, from a judgment rendered against them in an action upon an instrument alleged to be a sheriff's bond as tax collector.

1. As grounds for a reversal of the judgment, it is contended that errors were committed in refusing to take from the jury the undertaking which forms the basis of this action; in refusing to give a judgment of nonsuit; and in declining to instruct the jury

as requested to return a verdict for the defendants. These alleged assignments of error are founded on the assumption that the testimony introduced by the plaintiff was insufficient to show that Huntington, as sheriff of Baker County, ever had any authority from the defendants, as sureties on the bond, to deliver that instrument to the county court of that county. The legal principles so insisted upon were presented to, and considered by, this court on the former appeals (46 Or. 275, 79 Pac. 187, and 47 Or. 328, 83 Pac. 532), and the conclusions there reached have become the law of the case, precluding a review of the questions suggested: *Applegate* v. *Dowell*, 17 Or. 299 (20 Pac. 429); *Portland Trust Co.* v. *Coulter*, 23 Or. 131 (31 Pac. 280); *Stager* v. *Troy Laundry Co.* 41 Or. 141 (68 Pac. 405); *Pacific Biscuit Co.* v. *Dugger*, 42 Or. 513 (70 Pac. 523).

An exception having been taken to the following part of the court's charge, it is maintained that an error was committed in giving it, viz.:

"(3) I instruct you that, as a matter of law, the lack of names of the principal and sureties in the body of the bond, lack of justification by two of the sureties, minutes or entries opposite the names of the sureties who signed, and failure of the principal to sign the bond, are not fatal defects, and do not, of themselves alone, render the bond void. The effect of these was to put the county upon inquiry, at the time Huntington offered the bond, as to Huntington's authority to deliver the same as a completed obligation for the purpose claimed by the plaintiff, and the plaintiff will be held bound by any facts which you find it would then have ascertained by reasonable inquiry and investigation."

To render the instruction complained of intelligible, it is deemed proper to set out a copy of the bond, which, omitting the justification of the sureties thereon, is as follows:

"State of Oregon, County of Baker.    ss.

"Whereas, at an election held on the 4 day of June, 1900, A. H. Huntington was duly elected sheriff of the County of Baker, State of Oregon, we, A. L. Brown,——————————————————————————————and

——————————————————————————————————————hereby undertake that if the said A. H. Huntington shall not pay over according to law all money

that may come into his hands by virtue of such office and otherwise well and faithfully perform the duties of such office, that we, or either of us will pay to the State of Oregon, the sum of ten thousand dollars.

|  | | | |
|---|---|---|---|
| For | $ 1000.00 | A. L. Brown. | (Seal). |
| " | $ 2000.00 | James Fleetwood. | (Seal). |
| " | $ 1000.00 | D. Cartwright. | (Seal). |
| | $ 1000.00 | Harry A. Duffy. | (Seal). |
| | 1000.00 | J. T. Fyfer. | (Seal). |
| | 1000.00 | J. W. Isenhofer. | (Seal)." |

2. As evidence of the ability of the sureties to perform the undertaking, and as to the surrender of the instrument, we take the following excerpt from a former opinion: "It appears from accompanying certificates that Duffy, Fyfer, Cartwright and Isenhofer justified, but not so with Fleetwood and Brown. It is alleged that Huntington delivered the writing obligatory to the County Court of Baker County as and for his additional bond as sheriff and *ex officio* tax collector of that county, and that the same was accepted by the court:" 46 Or. 275 (79 Pac. 187). Considering the clauses of the instruction in the order stated, it is the signatures of the obligors to the bond, and not the' insertion of their names in the body thereof, that give validity to the instrument and render them liable for a breach of its conditions: 5 Cyc. 732 and 739; Murfree, Official Bonds, § 168. The statute, requiring the execution of a supplemental undertaking, is as follows:

"Before entering upon his duty as tax collector, the sheriff shall give a bond, signed by some responsible surety company, or some responsible surety or sureties as approved by the county court, conditioned for the faithful performance of his duties as such tax collector, in such amount as the county court shall direct, and such bond if signed by a surety company shall be paid for by the county court:" B. & C. Comp. § 3094.

The legislative assembly has not demanded that the sureties to the bond of a sheriff as tax collector should justify, and, in the absence of an enactment to that effect, the signatures of the obligors without evidence of their qualifications validates the instrument, if it is approved by the county court: *Du Boise* v. *Bloom,* 38 Iowa, 512.

3. An examination of the bond hereinbefore set out will show that preceding the name of A. L. Brown appear the word and figures, "For $1,000.00," and that similar memoranda are prefixed to the names of the other obligors, which words and figures are designated by the court as "minutes or entries." What such word and figures may mean is unimportant, so far as the plaintiff is concerned, for the bond on its face being joint and several, the prefixing to the names of the sureties of the minutes or entries adverted to cannot limit or alter their liability which is fixed by the terms of the instrument: *Dangel* v. *Levy,* 1 Idaho, 722. It has been held that the failure of a principal to sign a bond when his name appears in that capacity on the face of the instrument relieved the sureties from liability thereon for a delivery and acceptance thereof without their knowledge and consent: *Johnson* v. *Kimball Township,* 39 Mich. 187 (33 Am. Rep. 372) ; *Hall* v. *Parker,* 39 Mich. 287. In the case at bar, though the bond on its face states that Huntington was duly elected sheriff, etc., he is not designated therein as principal, and, as the only person named as a party is A. L. Brown, who signed the instrument, no notice on that account could have been imparted to the plaintiff of any failure to execute the undertaking.

As the other parts of the instruction complained of state the defendant's theory of the case they will not be considered, believing that no error was committed as alleged.

4. Exceptions having been taken to the following parts of the charge, it is contended that errors were committed in instructing the jury as follows:

"(5) It is not necessary for the plaintiff to show express authority from the defendants to Huntington to deliver the bond. Huntington's authority may be implied from the acts and conduct of the sureties. The mere signing by them of the uncompleted and imperfect instrument in the manner in which they signed it, and leaving it with Huntington without any express restriction as to its delivery, is not enough, as a matter of law, to show authority to deliver it, but it is an important fact, if you find it to be a fact, to be considered by you along with all the other evidence in determining whether the sureties intended to vest Huntington with authority to deliver the instrument in its

then condition as their act and deed, or whether the understanding was that the bond should not be delivered until the aggregate amounts assumed by the several sureties should equal the face of the bond.

"(6) The uncompleted condition of the instrument in the particulars to which I have referred, although in itself not a fatal defect, should be considered, as also should the attempt to limit the liability of the sureties, by writing the amount each intended to assume, if you find that the figures were placed there by the sureties or at their direction for any such purpose, opposite the signatures. If you are satisfied from the evidence that the defendants wrote or caused to be written these figures opposite their signatures in an attempt thereby to limit their liability, you should consider that fact. All these are important factors and should be considered. And if, at the time they executed the bond, they imposed no restrictions upon its delivery, and nothing was said about that matter or the obtaining of other sureties, this is an important fact for your consideration as evidence, although not conclusive of an intent to make Huntington their agent to deliver the bond to the county. Huntington's authority must be determined from all the circumstances in the case, and not from any single item of evidence."

It is argued that the fifth instruction assumed that it had been proven that the defendants left the bond with the sheriff without express restriction as to its delivery, thereby excluding a consideration of any reservation that might have been implied from the face of the instrument, the acts, conduct or conversation of the sureties, thus leading the jury to conclude that any evidence, other than an express limitation, was ineffectual. It is unnecessary to state whether or not there was any testimony introduced at the trial tending to warrant the court's declaration to the effect that the bond was left with Huntington "without any express restrictions as to its delivery," for the language so used is qualified by the further remark addressed to the jury, "if you find it to be a fact." The jury were thereby told that if they should find that the instrument was left with the sheriff without any express restrictions as to its delivery, such fact should be considered along with other evidence, such as the face of the instrument, the acts, conduct or conversation of the defendants, in determining whether or not they intended to authorize Huntington to deliver the bond in its then condition.

5. It is maintained that in referring to the bond and to the prefixing to the defendants' names the words, signs, etc., noted thereon as possibly evidencing an intention to limit their liability, the court, in the sixth instruction, told the jury that if they found that the figures placed there by the sureties, or at their direction, for any such purpose, etc., thereby submitted to them the interpretation of a writing which it should have construed; that the figures mentioned may have been so placed by some person other than the sureties, or without their direction; and that undue attention is called to and improper stress laid upon what is designated as an "important" fact, thus confining the limitation of restrictions to the time when the bond was executed and excluding from consideration all conversations the defendants may have had in respect to their liability prior to their signing the instrument. It is incumbent upon a court to interpret written instruments (B. & C. Comp. § 136), but where the construction of a document is referred to a jury, their finding thereon, if correct, renders the errors committed in such submission harmless: *Johnson* v. *Shively,* 9 Or. 333; *Christenson* v. *Nelson,* 38 Or. 473 (63 Pac. 648). In the case at bar, we believe the finding on the question involved in the instruction under consideration is correct, so that, if it be assumed that the matter should not have been submitted to the jury, their verdict will not be disturbed. It is possible that the word, signs and figures prefixed to the signatures of the sureties may not have been written by them, or with their direction, but if such be the case, the entries must, to have any effect as a limitation, have been made on the instrument prior to the signing, for, upon subscribing their names thereto, the sureties adopted such minutes as their own, so that the writing referred to, however made, comes within the terms of the charge.

6. The word "important," as used by the court to qualify the word "fact," was probably not well chosen, but as the same adjective is employed in limiting words in other parts of the charge that are favorable to the defendants, we do not think they were prejudiced, or the jury misled thereby.

7. It is unnecessary to consider whether or not the restric-

tions in respect to the delivery of the bond were confined to the time when the instrument was executed, for, if the defendants desired that prior conversations should have been included in that part of the charge, they should have requested an instruction to that effect, but, not having done so, we think no prejudicial error was committed in giving the fifth and sixth instructions.

8. Exceptions having been taken to the following parts of the charge, it is insisted that the court erred in giving them, to wit:

"(13) You are instructed that the sureties on the sheriff's official bond as tax collector are, equally with the sheriff, civilly liable for the acts of his deputies, and that it is immaterial in this case how the shortage arose or by whom it was created, or whether or not is arose from criminality or accident. These matters are not to be considered by you in this case.

"(14) It is admitted by the defendants in this cause, Brown, Fleetwood, Cartwright, Isenhofer and Fyfer, that the shortage in the account of A. H. Huntington, as sheriff, for taxes collected by him between September 5, 1900, and July 7, 1902, is $10,770.64, but the penal sum named in the bond is only $10,000. I instruct you that the said sum of $10,000 is the maximum amount of penalty that can be recovered by the plaintiff in this action against said defendants. If, therefore, you find for the plaintiff, your verdict against defendants should be for the sum of $10,000, with interest thereon at the legal rate from the date of the service of summons in this case on the defendants, to wit, the 12th day of March, 1903."

It is argued by defendant's counsel that no testimony was offered tending to show that the shortage of money adverted to was occasioned by any deputy sheriff, and for that reason the thirteenth instruction was erroneous. The bill of exceptions certified to by the judge does not purport to contain all the testimony given at the trial, nor is any statement made therein that no testimony was offered tending to show what caused the loss of the taxes collected. The court reporter, however, certifies to what purports to be a transcript of all the testimony so introduced, which copy is referred to and identified in the court's certificate; but as the transcript was evidently sent up in support of the defendants' motions for a judgment of nonsuit, and for an instruction to the jury to return a verdict in their favor, it

should be examined for those purposes only. If a transcript of all the testimony, etc., could take the place of a bill of exceptions, there would be no necessity for preparing a formal statement in writing of the objections and exceptions taken by a party during the trial of a cause, with so much of the testimony only as illustrated the error alleged to have been committed, for by interposing a motion for a judgment of nonsuit, or for an instruction to return a verdict for the defendant, the entire testimony must be examined upon every ground that could be suggested, the work of a court of appeals would become almost interminable.·

9. The bill of exceptions not containing the statements mentioned, it must be presumed that the instruction complained of was based on the testimony introduced, and hence no error was committed in giving it.

The fourteenth instruction limited the recovery to the penal sum specified in the bond, in case the jury found that plaintiff was entitled to recover, and in our opinion it correctly stated the law applicable to the case.

An exception having been taken to the following part of the charge, it is claimed that an error was committed in giving it, viz.:

"(16) I instruct you that, as a matter of law, a person who signs a joint and several bond or obligation in which a specific penal sum is named, cannot lessen or limit his liability thereon by writing another and smaller sum opposite his signature. If liable at all on the instrument he can be held for the full amount, notwithstanding such figures. If he desires to limit or lessen his liability he must insert appropriate words in the body of the instrument. But you may consider such sums written in front of the names in determining whether or not any restriction or limitations were placed upon the delivery of the bond; provided you further find that defendants wrote the sums opposite their names or authorized it to be done at the time of signing."

If the limit of the liability of a surety had been stated in the body of the bond, the sum so specified would have been notice thereof to the obligee, and probably constituted the measure of recovery against each: *People* v. *Stacy,* 74 Cal. 373 (16 Pac. 192). Prefixing numbers to the names of sureties on a joint

and several bond, however, could·not change the legal effect of the instrument or limit the liability of the persons whose names were so subscribed to the sums indicated: *Dangel* v. *Levy,* 1 Idaho, 722. No error was committed in giving this instruction.

The defendants' counsel requested the court to give the following instruction, which was modified by inserting the words indicated in parenthesis, and, an exception having been saved, it is maintained that an error was committed, to wit:

"(17) I instruct you that the signing of the instrument in evidence by the defendants, and the delivery thereof to Huntington, if you find they did so, did not authorize Huntington to deliver it to the county court of Baker County; and unless you further find from the evidence that the defendants, either by word or act, waived the limitation and restrictions (if any), expressed upon the face of the instrument, such delivery, if any, by Huntington was unauthorized, and your verdict must be for the. defendants."

It is argued that the insertion of the words "if any" in the instruction requested submitted to the jury the determination of the question whether or not the word, signs, and figures prefixed to the names of the sureties, constituted a limitation upon the instrument, when the duty of construing the language of the writing devolved upon the court. If it be assumed that the interpretation of the prefixes to the names of the sureties was erroneously submitted to the jury, we believe their finding thereon was correct, and that the verdict should not be set aside: *Johnson* v. *Shively,* 9 Or. 333; *Christenson* v. *Nelson,* 38 Or. 473 (63 Pac. 648).

It follows from these considerations that the judgment should be affirmed, and it is so ordered.          .          AFFIRMED.

MR. JUSTICE HAILEY, having been of counsel, took no part herein.

Decided 19 March, 1907.

ON MOTION FOR REHEARING.

MR. JUSTICE MOORE delivered the opinion.

10. The defendants' counsel having filed a petition for a rehearing, call particular attention to that part of instruction No.

14 pursuant to which a verdict was returned, and judgment rendered for interest on the sum specified in the undertaking, from March 12, 1903, when the summons was served, to June 19, 1906, when the recovery was had. The counsel for the respective parties stipulated, March 31, 1903, that during the term for which the defendants were sureties on the bond of the sheriff as tax collector, that officer received, failed to account for and converted to his own use the sum of $10,770.64. This agreement was in the nature of an acknowledgment of the extent of the sheriff's defalcation, but it was not an admission of their liability for any part thereof. The statute regulating the compensation to be paid for the use of money is, so far as applicable, as follows:

"The rate of interest in this state shall be 6 per centum per annum, and no more, on all moneys after the same become due:" B. & C. Comp. § 4595.

When the right to recover in an action is in good faith denied, interest will not be allowed on the demand prior to its liquidation by judgment: 22 Cyc. 1515; *Sorenson* v. *Oregon Power Co.* 47 Or. 24 (82 Pac. 10). That the defendants in good faith controverted their liability is evidenced by the several appeals which they have prosectued, and this being so, the sum due was not liquidated as to them until June 19, 1906, when the last judgment was rendered. There is no dispute as to the time for which interest was awarded, and if within 10 days the plaintiff remits all interest prior to the rendition of the judgment, the cause will be remanded to the court below, with directions to enter a judgment for the sum of $10,000, with interest from June 19, 1906, at the rate of 6 per cent per annum; but if this reduction is not made within the time specified, the judgment will be reversed, and a new trial ordered: *Graham* v. *Merchant,* 43 Or. 294 (72 Pac. 1088).

11. The defendants will be allowed their costs and disbursements in this court upon the appeal.

AFFIRMED: REHEARING DENIED.